IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT JEFFERSON CITY

| | |
|---|---|
| JOSEPH BLECHA, on Behalf of Himself and All Other Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>TSC DIGITAL ENTERTAINMENT, INC., an Arkansas corporation,<br><br>    Defendant. | Case No. _____<br><br><br>**Demand For Jury Trial** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, Joseph Blecha ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant, TSC Digital Entertainment, Inc. ("Defendant" or "TSC"), and alleges, on personal knowledge as to all facts related to him and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff brings this collective and class action on behalf of himself, and all others similarly situated satellite installation and repair technicians (hereinafter, the "Technicians"), against Defendant for its unlawful employment scheme that denies Plaintiff and the Technicians, wages and benefits to which they were (and are) lawfully entitled.

2. Specifically, Defendant incorrectly treated Plaintiff and the Technicians as independent contractors even though they were non-exempt employees, and therefore, *inter alia*, failed to reimburse them for job-related expenses, failed to pay them in a timely fashion, and failed to pay them the legally mandated minimum wage and overtime pay.

3. Pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiff asserts claims for violation of the FLSA, 29 U.S.C. § 201, *et seq*., as a putative collective action on behalf of the FLSA Collective as defined below.

4. Pursuant to Fed. R. Civ. P. 23, Plaintiff also asserts claims for violations of Missouri wage and common laws and Arkansas wage and common laws, as a putative class action on behalf of himself and the classes, as defined below.

5. Plaintiff seeks, *inter alia*, compensatory and/or punitive damages, injunctive and declaratory relief, pre- and post-judgment interest, statutory and/or liquidated damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter under 28 U.S.C. § 1331. Specifically, this action arises under the FLSA, 29 U.S.C. § 201, *et seq.* This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant: (a) conducts continuous and systematic business in this district and has intentionally availed itself of the laws within this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## PARTIES

8. Plaintiff is a resident of Columbus, Cherokee County, Kansas, who was employed by Defendant and treated as an independent contractor by Defendant from in or around October 2019 until he was terminated for taking on a job request from another company in September 10, 2020. Plaintiff worked for Defendant by installing and repairing residential satellite internet and television equipment in western Arkansas, eastern Oklahoma, Kansas, and Missouri.

9. Defendant is an Arkansas corporation, doing business in western Arkansas, eastern Oklahoma, Kansas, and Missouri, with its company headquarters located in Fort Smith, Sebastian County, Arkansas.

2

## GENERAL ALLEGATIONS

### A.    Employment with Defendant

10.    Defendant is a satellite entertainment service company that provides installation and repair services of residential and commercial satellite internet and television equipment to customers in multiple states, including western Arkansas, eastern Oklahoma, Kansas, and Missouri.

11.    Defendant employed Plaintiff and the Technicians to install and repair residential and/or commercial satellite internet and television equipment in western Arkansas, eastern Oklahoma, Kansas, and Missouri.

12.    Plaintiff and the Technicians did not have a written contract to perform work for Defendant.

13.    Plaintiff and the Technicians had the ability to work for Defendant indefinitely, subject to their right to resign and Defendant's right to terminate them.

14.    Prior to the start of employment, Defendant conducted background checks on Plaintiff and the Technicians.

15.    Defendant directed Plaintiff and the Technicians to create business bank accounts, so that any payments from Defendant could be directly deposited into their business bank accounts.

16.    Plaintiff and the Technicians were required to obtain worker's compensation insurance or sign a Certificate of Non-Coverage waiver to work for Defendant.  Plaintiff was specifically informed that if he refused to do so, he would effectively be terminated by being removed from the scheduling calendar.

17.    Plaintiff and the Technicians were not required to have any specialized or unique skill to work for Defendant.

18.    Plaintiff and the Technicians were required to go through an initial training program.  The training program consisted of attending an online course offered by Defendant for approximately one week, as well as a field training with a supervisor, called "ride alongs" for

3

approximately two weeks. Although the training was mandatory, Plaintiff and the Technicians were not paid for any of that time.

19. The training program provided Plaintiff and the Technicians with a detailed step-by-step guide on how to do their jobs and how to deal with customers. The steps Plaintiff and Technicians had to take were as follows: (1) greet the customer; (2) take before pictures; (3) plug in the modem and walk around the house to test the strength of the Wi-Fi; (4) explain to the customer what they were going to do; (5) obtain signature from the client that gives permission for Plaintiff and the Technicians to perform the installation; (6) install the satellite dish pursuant to certain instructions by Defendant (i.e., mounting only on certain material, digging a hole no less than certain inches below ground, using certain amount of concrete to secure the dish); (7) take after pictures; and (8) obtain signature from the client that indicated that the job was completed. Without the signature from the client, Plaintiff and Technicians did not get paid for the job.

20. Throughout their employment, Plaintiff and the Technicians were required to attend mandatory training sessions after the initial training program, including trainings on how to use new software and perform certain repairs.

21. Plaintiff and the Technicians were required to work according to the schedule that was set by Defendant's schedule.

22. For example, when Plaintiff began his employment with TSC, Defendant scheduled him to work Monday through Friday, from 8:00 a.m. to 8:00 p.m., and one weekend a month, Saturday and Sunday, from 8:00 a.m. to 8:00 p.m. Thereafter, on or around March of 2020, Defendant unilaterally changed Plaintiff's schedule and ordered him to work Monday through Friday, 8:00 a.m. to 8:00 p.m., as well as every other weekend, Saturday and Sunday, from 8:00 a.m. to 8:00 p.m. Occasionally, he would have to work before 8:00 a.m. and after 8:00 p.m. Essentially, Plaintiff was required to work 14 consecutive days with two days off in between. The Technicians had schedules which were similar to Plaintiff's schedule.

23.     Plaintiff and the Technicians were essential to the success of Defendant's business and their duties were to Defendant's ability to provide services to its customers because they provided the services Defendant was selling.

**B.     Experience While Working for Defendant**

24.     Plaintiff and the Technicians received all assignments, called "work orders," from Defendant through an application software called "OASIS" that they were required to download onto their phone.

25.     Plaintiff and the Technicians had no control over customer volume.

26.     Plaintiff and the Technicians received as many as six work orders a day with specific directions on what services to provide.

27.     Defendant regularly switched, added, and cancelled work orders without asking Plaintiff and the Technicians.

28.     Defendant tracked where Plaintiff and the Technicians were at all times through OASIS.

29.     Plaintiff and the Technicians were required to inform Defendant through OASIS when they were on their way to the customer's location.

30.     Defendant also inspected the work of Plaintiff and the Technicians to ensure that jobs were done as instructed by Defendant.  Before the work was performed, Plaintiff and the Technicians were required to take "before" pictures and upload them onto OASIS.  After the work was completed, Plaintiff and the Technicians were also required to take "after" pictures of their work and upload them onto OASIS.  Specifically, they would have to take pictures to show Defendant how the satellite was mounted, the line of sight to the satellite, and the ground block.

31.     Defendant sent Plaintiff and the Technicians email reminders with specific instructions regarding how to take these "quality control" pictures.  For example, Defendant explained the photos should not be taken too closely, but that they must back up a meter or two to show all parts of the grounding location and connections.

32.     Plaintiff and the Technicians were also required to scan the barcodes that were affixed on the equipment used for the job and upload them onto OASIS.

33.     If a customer wanted Plaintiff and the Technicians to do additional work other than what was listed on the work order, Plaintiff and the Technicians would only receive payment for that additional work if Defendant approved the job.

34.     If an issue arose regarding an installation or repair that Plaintiff and the Technicians worked on after they left the customer's location, Defendant directed them to go back and fix the problem. If the problem arose from defective equipment, like a modem, Defendant paid Plaintiff and the Technicians a flat fee, but did not compensate them for their time. However, if a problem arose for any other reason, Defendant would claim it was a "quality issue" and did not pay Plaintiff and the Technician for performing the additional required work.

35.     Aside from installations and repairs, Defendant also directed Plaintiff and the Technicians to post advertising signs for HughesNet, the satellite internet that TSC installs, at various locations. Plaintiff and the Technicians were required to take and upload pictures to OASIS of the advertising signs that they posted. Plaintiff and the Technicians were not paid for that time but received a $50 bonus if someone called and signed up for HughesNet in response to a sign posted by them.

36.     Defendant provided Plaintiff and the Technicians with a t-shirt bearing the HughesNet logo that they were told to wear while working for Defendant.

37.     If Plaintiff and the Technicians did not adhere to Defendant's rules and procedures, asked to take time off, or if issues arose with respect to the performance of their job, they were reprimanded and/or disciplined by Defendant.

38.     For example, when Plaintiff asked for time off, Defendant sent Plaintiff fewer jobs, thereby reducing his compensation, and/or assigned him a group of jobs that were located very far away from his residence the following week.

6

39.    In fact, Defendant told Plaintiff and the Technicians, "[c]ompliance with all work order policy and procedures is required" and "future failure to comply with required policy/procedure may result in a non-compliance fee."

40.    All investment and risk capital were provided by Defendant.  Defendant was also responsible for all financing, the acquisition and/or lease of the physical assets and equipment, inventory, advertising, and customer service.

41.    Plaintiff and the Technicians were required to report to Defendant's offices located in Fort Smith, Arkansas, at a specified time, to retrieve installation equipment and purchase tools and parts from Defendant every two weeks.

42.    For Plaintiff, Defendant's office was a three-hour drive from his home.

43.    Defendant provided the installation equipment required to perform the job, which included, for example, satellites, radios, modems, and tri-mast mounts.  Defendant ensured each piece of equipment handed to Plaintiff and the Technicians was captured and accounted for by requiring them to: (1) take a sticker with a barcode that was affixed on each box of equipment; (2) place it on paperwork provided by Defendant once the equipment was used; and (3) return the paperwork back to Defendant to be scanned into Defendant's system.  Plaintiff and the Technicians were not able to retrieve the next set of equipment unless the appropriate paperwork was returned to Defendant.

44.    On the other hand, Defendant required Plaintiff and the Technicians to purchase *from* Defendant other tools and parts necessary to do the installation and repair.  The tools and parts included, for example, wires, cables, cable clips, poles, sealants, and grounding clamps.  Plaintiff and the Technicians were only allowed to purchase the tools and parts from Defendant and the price was non-negotiable and set by Defendant.  The cost of these tools and parts was directly deducted from the paycheck of Plaintiff and the Technicians in varying amounts, from approximately $100 to $300 every other pay period.

45.    Since the beginning of the COVID-19 pandemic, in or around March 2020, Defendant also required Plaintiff and the Technicians to purchase and wear personal protective

7

equipment ("PPE") when interacting with customers. If a customer complained that Plaintiff and the Technicians were not wearing PPE, Defendant told them that they would be "decertified," i.e., terminated.

46. The entire process to retrieve the equipment and purchase the tools and parts from Defendant took about three hours. However, Plaintiff and the Technicians were not paid for that time.

47. Plaintiff and the Technicians also incurred other job-related expenses, including, but not limited to, automobile costs and depreciation, gasoline, automobile maintenance and parts, insurance, and cellular telephone charges to complete their job duties.

48. Defendant never reimbursed Plaintiff and the Technicians for any job-related expenses.

49. As a result of its misclassification of Plaintiff and the Technicians as independent contractors, Defendant issued Plaintiff and the Technicians 1099 tax forms rather than W-2 tax forms for all taxes on all income they earned from TSC.

50. Defendant managed all aspects of its business operations involving Plaintiff and the Technicians, including dictating which jobs Plaintiff and the Technicians worked, when the work was completed, how the work was completed, and what equipment to purchase and/or use.

**C.     Plaintiff and The Technicians Were Not Paid Minimum Wage and Overtime Pay**

51. Plaintiff and the Technicians were paid on a piece rate basis per job assigned to them by Defendant. The amount paid depended on the type of service Plaintiff and the Technicians were providing. For example, Plaintiff and the Technicians received $115 for an installation, $50 to $75 for a repair, and $25 for setting up a Wi-Fi extender.

52. Defendant paid Plaintiff and the Technicians weekly on a set pay day and direct-deposited the amount into the business bank accounts that Defendant required them to set up before starting work for Defendant.

8

53.     As a result of Defendant's method of compensating Plaintiff and the Technicians, and its failure to reimburse them for job-related expenses, they did not receive minimum wage for all hours worked or overtime pay for hours they worked over 40 hours in a given workweek.

54.     The exact amount of minimum wage and overtime pay that Defendant owes Plaintiff and the Technicians can be determined, in part, by Defendant's pay records.

55.     At all relevant times herein, Defendant unlawfully misclassified Plaintiff and the Technicians as independent contractors when they were non-exempt employees under federal and state wage and hour laws.

56.     Non-exempt employees are entitled to receive minimum wage and overtime pay.

57.     Plaintiff and the Technicians were not paid for, and still have not been paid, minimum wage and overtime pay.

**D.     Defendant Terminated Plaintiff**

58.     During the course of his employment, Plaintiff orally complained to Jerry Reynolds, Jr. ("Mr. Reynolds"), his supervisor and the Operations Manager of TSC, that he was misclassified as an independent contractor.  Specifically, Plaintiff told Mr. Reynolds that TSC could not require him to work at specific times or restrict him from working for other companies if TSC classified him as an independent contractor.

59.     Mr. Reynolds responded by stating that Plaintiff should do as he was told and that he "would be canned" if he ever decided to take on work from other companies.

60.     On September 4, 2020, Plaintiff informed Defendant via email that he would be unavailable to work on September 8 and September 9, 2020.

61.     On September 8, 2020, Defendant informed Plaintiff that, aside from an email, Plaintiff should have also contacted the manager via a phone call or text regarding his unavailability and that Defendant would be reevaluating their working relationship.

62.     That week, Defendant cancelled all work orders that had been scheduled for Plaintiff.

9

63.     Because Defendant had cancelled all of Plaintiff's scheduled work orders for that week, on September 10, 2020, for the first time during his employment with Defendant, Plaintiff accepted a job request from another company and informed Defendant that he had done so.

64.     That same day, September 10, 2020, Defendant terminated Plaintiff.

65.     In its termination email, Defendant demanded that Plaintiff return all equipment he had in his possession, and that if the equipment was not in good condition, as determined by TSC, Defendant would deduct a certain amount from his pay.

66.     On September 18, 2020, Defendant sent Plaintiff what it claimed to be his "final pay," deducting $630 for what Defendant described was the full amount for the poles that Plaintiff did not return.

## COLLECTIVE ACTION ALLEGATIONS

67.     Pursuant to FLSA, 29 U.S.C. § 216(b), Plaintiff's consent form is attached as **Exhibit A**.[1]  It is likely other individuals will join this case as opt-in Plaintiffs as the case proceeds.

68.     Pursuant to FLSA, 29 U.S.C. § 216(b), Plaintiff seeks to certify the following FLSA Collective:

> All current and former satellite installation and repair technicians who worked for Defendant and were classified as "independent contractors" at any time within three (3) years prior to the filing of the original Complaint in this action through the date of final judgment.

69.     Defendant knew or should have known that Plaintiff and the FLSA Collective performed work for Defendant that required minimum wage and overtime pay.  Defendant operated under a scheme to deprive Plaintiff and the FLSA Collective of minimum wage and overtime compensation by misclassifying them as independent contractors and failing to properly compensate them.

---

[1] Personal contact information has been redacted for privacy reasons.

Case 2:21-cv-00019-WJE   Document 1   Filed 01/12/21   Page 10 of 25

70.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the FLSA Collective.  In violation of the FLSA, Defendant has denied minimum wage and overtime pay to numerous similarly situated current and former satellite installation and repair technicians who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join.  Members of the FLSA Collective are known to Defendant and should be readily identifiable through Defendant's records.

## CLASS ACTION ALLEGATIONS

71.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action as a class action on behalf of himself and all others similarly situated.

72.     Specifically, Plaintiff brings Count III and IV, as a Rule 23 class action on behalf of himself and the following persons:

> All current and former satellite installation and repair technicians who worked for Defendant in Missouri and were classified as "independent contractors" at any time within two (2) years prior to the filing of the original Complaint in this action through the date of final judgment.

73.     Specifically, Plaintiff brings Count V, as a Rule 23 class action on behalf of himself and the following persons:

> All current and former satellite installation and repair technicians who worked for Defendant in Missouri and were classified as "independent contractors" at any time within five (5) years prior to the filing of the original Complaint in this action through the date of final judgment.

74.     Plaintiff brings Counts VI, VII, VIII, and IX, as a Rule 23 class action on behalf of himself and the following persons:

> All current and former satellite installation and repair technicians who worked for Defendant in Arkansas and were classified as "independent contractors" at any time within three (3) years prior to the filing of the original Complaint in this action through the date of final judgment.

11

75.     **Numerosity**:  The potential members of the proposed classes are so numerous that joinder of all members would be infeasible and impracticable.  While the precise number of class members is unknown to Plaintiff at this time, it is estimated that each of the classes above include at least 20 individuals.

76.     **Ascertainable Class**:  The proposed classes are ascertainable in that its members can be identified and located using information contained in Defendant's payroll and personnel records.

77.     **Typicality**:  The claims of Plaintiff are typical of the claims of all members of the classes because all members of the classes sustained similar injuries and damages arising out of Defendant's common course of conduct in violation of the law, and the injuries and damages of all members of the class were caused by Defendant's wrongful conduct in violation of the law, as alleged herein.

78.     **Adequacy**:  Plaintiff is an adequate representative of the classes, will fairly protect the interests of the members of the classes, and will vigorously pursue this suit.  Plaintiff has no interests antagonistic to the interests of the other members of the classes, and are not subject to unique defenses.  Plaintiff's attorneys are competent, skilled, and experienced in litigating class actions of this kind and other complex litigation.

79.     **Superiority**:  A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over questions affecting only individual class members.  Each member of the classes has been damaged and is entitled to recovery by reason of: Defendant's illegal policy and/or practice of misclassifying Plaintiff and class members as "independent contractors" and refusing to pay them minimum wage and overtime pay.  A class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judicial system.  Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

12

80.    **Existence of Predominance and Questions of Fact and Law**:  There are

common questions of fact and law as to the members of the classes which predominate over

questions affecting only individual members of the classes, including without limitation:

  a.  Whether Defendant misclassified Plaintiff and the members of the classes
      as independent contractors;
  b.  Whether Defendant failed to fully and accurately record the hours worked
      each day and each workweek by the members of the classes as required
      under applicable state statutes;
  c.  Whether Defendant violated Missouri wage and common laws by failing
      to pay Plaintiff and members of the classes all compensation due and
      owing;
  d.  Whether Defendant violated Arkansas wage and common laws by failing
      to pay Plaintiff and members of the classes all compensation due and
      owing;
  e.  Whether Defendant has been unjustly enriched; and
  f.  Whether Defendant is liable to Plaintiff and the members of the classes for
      damages claimed hereunder, including but not limited to compensatory
      and/or punitive damages, injunctive and declaratory relief, pre- and post-
      judgment interest, statutory and/or liquidated damages, and reasonable
      attorneys' fees and costs.

### CAUSES OF ACTION

### COUNT I
**Failure to Pay Minimum Wage**
**(Violation of the FLSA, 29 U.S.C. § 201, *et seq*.)**

81.    Plaintiff repeats and realleges the allegations contained in the preceding

paragraphs as if fully set forth herein.

82.    At all relevant times herein, Defendant has been and continues to be an employer

within the meaning of the FLSA, 29 U.S.C. §§ 203 and 206.

83.    The FLSA requires "every employer [to] pay each of his employees who in any

workweek is engaged in commerce" at least the minimum wage.  *See* 29 U.S.C. §§ 206(a)(1).

84.    Specifically, during the relevant time period, Defendant was required to pay

Plaintiff and members of the FLSA Collective a minimum wage of not less than $7.25 per hour

pursuant to the FLSA.  *Id.*

13

85.     Department of Labor regulations provide that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally, or 'free and clear.'"  29 C.F.R. § 531.35.  The FLSA's minimum wage requirement is not met "where the employee 'kicks-back' directly or indirectly" all or part of the employer's wage payment.  *Id.*  An FLSA violation occurs "in any workweek when the cost of [tools of the trade] purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

86.     At all relevant times herein, Plaintiff and members of the FLSA Collective did not qualify for any exemption from the minimum wage obligations imposed by the FLSA.

87.     At all relevant times herein, Plaintiff and members of the FLSA Collective are, or were, employees of TSC – and not independent contractors – and, thus, were entitled to receive the protections afforded by the FLSA.

88.     Defendant knew or should have known that Plaintiff and members of the FLSA Collective were entitled to minimum wage pay under the FLSA.

89.     Despite this knowledge, Defendant paid Plaintiff and members of the FLSA Collective a certain percentage of the profits made from the service ultimately purchased and paid for by the customer, which did not equal or exceed the minimum wage rate.

90.     In addition to the low rates of compensation, Defendant required Plaintiff and members of the FLSA Collective to pay for all job-related expenses out-of-pocket and did not reimburse them for those costs.  Thus, the amounts paid to Plaintiff and members of the FLSA Collective "finally and unconditionally or free and clear" did not equal to or exceed the minimum wage rate.

91.     Defendant's repeated and intentional failure to pay Plaintiff and members of the FLSA Collective at least the minimum wage for all hours they worked was willful and not done in good faith within the meaning of the FLSA.  *See* 29 U.S.C. § 260.

14

92.     As a result of Defendant's willful violations of the FLSA, Plaintiff and members of the FLSA Collective were injured because they did not receive the minimum wages due to them.

93.     The exact amount of compensation that Defendant has failed to pay Plaintiff and members of the FLSA Collective is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

94.     The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records.  Plaintiff and members of the FLSA Collective are entitled to review their records of hours worked to determine the exact amount of minimum wages they are owed by Defendant.  Absent Defendant keeping these records as required by law, Plaintiff and members of the FLSA Collective are entitled to submit their information about the number of hours worked.

95.     Accordingly, Plaintiff and members of the FLSA Collective seek an award of unpaid minimum wages, an additional equal amount as liquidated damages as provided by statute, and reasonable attorneys' fees and costs as provided by statute.

## COUNT II
### Failure to Pay Overtime
### (Violation of the FLSA, 29 U.S.C. § 201, *et seq.*)

96.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

97.     At all relevant times herein, Defendant has been and continues to be an employer within the meaning of the FLSA, 29 U.S.C. §§ 203 and 207.

98.     FLSA required Defendant to pay Plaintiff and members of the FLSA Collective at least one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek.  *See* 29 U.S.C. § 207(a)(1).

15

99.     Department of Labor regulations provide that "'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'"  29 C.F.R. § 531.35.  The FLSA's minimum wage requirements are not met "where the employee 'kicks-back' directly or indirectly" all or part of the employer's wage payment.  *Id.*  An FLSA violation occurs "in any workweek when the cost of [tools of the trade] purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Id.*

100.     At all relevant times herein, Plaintiff and members of the FLSA Collective did not qualify for any exemption from the overtime wage obligations imposed by the FLSA.

101.     At all relevant times herein, Plaintiff and members of the FLSA Collective are, or were, an employee of TSC – not an independent contractor – and, thus, were entitled to receive the protections afforded by the FLSA.

102.     Defendant knew or should have known that Plaintiff and members of the FLSA Collective was entitled to overtime pay under the FLSA.

103.     Despite this knowledge, Defendant did not pay Plaintiff and members of the FLSA Collective at least one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek.

104.     Moreover, Defendant required Plaintiff and members of the FLSA Collective to pay for all job-related expenses out-of-pocket and did not reimburse them for those significant costs.  Thus, Defendant failed to compensate Plaintiff and members of the FLSA Collective at time-and-one-half their regular rate of pay for hours worked over 40 hours in a workweek.

105.     Defendant's repeated and intentional failure to pay Plaintiff and members of the FLSA Collective overtime wages was willful and was not done in good faith within the meaning of the FLSA.  *See* 29 U.S.C. § 260.

106.     As a result of Defendant's willful violations of the FLSA, Plaintiff and members of the FLSA Collective were injured because they did not receive overtime wages due to them.

16

107. The exact amount of compensation that Defendant has failed to pay Plaintiff and members of the FLSA Collective is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

108. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff and members of the FLSA Collective are entitled to review their records of hours worked to determine the exact amount of overtime wages owed to them by Defendant. Absent Defendant keeping these records as required by law, Plaintiff and members of the FLSA Collective are entitled to submit his information about the number of hours worked.

109. Accordingly, Plaintiff and members of the FLSA Collective seek an award of unpaid overtime wages, an additional equal amount as liquidated damages as provided by statute, plus interest, and reasonable attorneys' fees and costs as provided by statute.

### COUNT III
**Failure to Pay Minimum Wage**
**(Violation of the MMWL, Mo. Ann. Stat. § 290.500, *et seq.*)**

110. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

111. At all relevant times, Plaintiff and the members of the class were entitled to the rights, protections, and benefits provided under the MMWL, Mo. Ann. Stat. § 290.500, *et seq.*

112. The MMWL regulates, among other things, the payment of minimum wage by employers. Mo. Ann. Stat. § 290.500(3) & (4); Mo. Ann. Stat. § 290.502.

113. At all relevant times herein, Defendant was the "employer" of Plaintiff and the members of the class within the meaning of the MMWL. Mo. Ann. Stat. § 290.500(4).

114. At all relevant times herein, Plaintiff and the members of the class were Defendant's "employees" within the meaning of Missouri's wage and hour laws. Mo. Ann. Stat. § 290.500(3).

17

115.     Pursuant to the MMWL, employees are entitled to be compensated at the minimum wage rate set forth under Mo. Ann. Stat. § 290.502 for all hours worked.

116.     Defendant required Plaintiff and the members of the class to pay all job-related expenses out-of-pocket and did not reimburse them for those significant costs.

117.     Defendant, pursuant to its policy and practice, violated the MMWL by refusing and failing to pay Plaintiff and the members of the class minimum wages as required by Mo. Rev. Stat. § 290.502.

118.     Accordingly, Plaintiff and the members of the class seek an award of unpaid wages, an additional equal amount as liquidated damages as provided by statute, plus interest, and reasonable attorneys' fees and costs as provided by statute.  Mo. Rev. Stat. § 290.527.

### COUNT IV
### Failure to Pay Overtime
### (Violation of the MMWL, Mo. Ann. Stat. § 290.500, *et seq*.)

119.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

120.     At all relevant times, Plaintiff and the members of the class were entitled to the rights, protections, and benefits provided under the MMWL, Mo. Ann. Stat. § 290.500, *et seq.*

121.     The MMWL regulates, among other things, the payment of minimum wage and overtime wages by employers.  Mo. Ann. Stat. § 290.500(3) & (4); Mo. Ann. Stat. § 290.505.

122.     At all relevant times herein, Defendant was the "employer" of Plaintiff and the members of the class within the meaning of the MMWL.  Mo. Ann. Stat. § 290.500(4).

123.     At all relevant times herein, Plaintiff and the members of the class were Defendant's "employees" within the meaning of Missouri's wage and hour laws.  Mo. Ann. Stat. § 290.500(3).

124.     Pursuant to the MMWL, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are paid for all work performed in excess of 40 hours in a workweek.  Mo. Ann. Stat. § 290.505.

18

125.    Defendant required Plaintiff and the members of the class to pay all job-related expenses out-of-pocket and did not reimburse them for those significant costs.

126.    Defendant, pursuant to its policy and practice, violated the MMWL by refusing and failing to pay Plaintiff and the members of the class overtime wages as required by Mo. Rev. Stat.  290.505.

127.    Accordingly, Plaintiff and the members of the class seek an award of unpaid wages, an additional equal amount as liquidated damages as provided by statute, plus interest, and reasonable attorneys' fees and costs as provided by statute.  Mo. Rev. Stat. § 290.527.

<u>COUNT V</u>
**Unjust Enrichment Under Missouri Common Law**

128.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

129.    Under Missouri law, to recover on a claim of unjust enrichment, a party must show: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit.

130.    Defendant has received and benefited from the uncompensated labor of Plaintiff and the members of the class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

131.    At all relevant times herein, Defendant devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff and the members of the class without paying them the minimum wage for all hours worked and overtime pay for all hours worked over 40 hours per workweek.

132.    Additionally, Plaintiff and the members of the class have advanced certain payment for obligations which were owed by Defendant for significant costs and expenses which were necessary for the operation of Defendant's business, including, but not limited to, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts,

insurance, cellular telephone charges, and other equipment necessary and expenses to complete their job duties.

133.    At the same time, Defendant retained benefits resulting from its refusal to pay its legal obligations and business expenses as an employer, including, but not limited to, workman's compensation contributions, workman's compensation benefits, unemployment insurance payments, unemployment insurance, and wages.

134.    Contrary to all good faith and fair dealing, Defendant encouraged Plaintiff and the members of the class to perform work during the day while failing to pay minimum wage for all hours they worked and overtime wages for all hour worked over 40 hours per workweek.

135.    By reason of having secured the work and efforts of Plaintiff and the members of the class without paying minimum wage for all hours worked and overtime wages for all hour worked over 40 hours per workweek, Defendant enjoyed reduced overhead with respect to its labor costs, and therefore realized additional earnings and profits to its own benefit, and to the detriment of Plaintiff and the members of the class.

136.    Defendant retained and continue to retain such benefits contrary to fundamental principles of justice, equity, and good conscience.

137.    As a result, Plaintiff and the members of the class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant.

**<u>COUNT VI</u>**
**Failure to Pay Wages For All Hours Worked**
**(Violation of the AMWA, Ark. Code. Code Ann. § 11-4-201, *et seq.*)**

138.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

139.    Under Arkansas law, employees are entitled to be compensated at the minimum wage rate set forth under Ark. Code Ann. § 11-4-210 for all hours worked.

140.    Defendant failed to properly compensate Plaintiff and the members of the class by failing to pay minimum wage for all hours work in any one week.

20

141.     Defendant willfully violated the provisions of Ark. Code Ann. § 11-4-218 and is therefore liable to Plaintiff and the members of the class.

142.     As a result of Defendant's unlawful acts as described herein, Plaintiff and the members of the class have been deprived of compensation for all time worked and is entitled to costs and attorneys' fees.

**COUNT VII**
**Failure to Pay Overtime**
**(Violation of the AMWA, Ark. Code. Code Ann. § 11-4-201, *et seq.*)**

143.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

144.     Ark. Code Ann. § 11-4-211 provides, in relevant part: "[N]o employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate of pay at which he or she is employed."

145.     Defendant failed to properly compensate Plaintiff and the members of the class by failing to pay overtime for hours worked in excess of 40 hours in any one week.

146.     Defendant willfully violated the provisions of Ark. Code Ann. § 11-4-218 and is therefore liable to Plaintiff and the members of the class.

147.     As a result of Defendant's unlawful acts as described herein, Plaintiff and the members of the class have been deprived of compensation for all time worked and is entitled to costs and attorneys' fees.

**COUNT VIII**
**Failure to Timely Pay Wages**
**(Violation of AMWA, Ark. Code Ann. § 11-4-405)**

148.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

149. Ark. Code Ann. § 11-4-405 states, in relevant part: "an employer that discharges an employee is required to pay all wages due by the next regular payday."

150. Defendant failed to properly compensate Plaintiff and the members of the class the minimum wage for all hours worked and overtime for all hours worked in excess of 40 hours in any one week.

151. Defendant still has not properly compensated Plaintiff and the members of the class a minimum wage for all hours worked and overtime for all hours worked in excess of 40 hours in any one week, even after it discharged Plaintiff and members of the class.

152. Accordingly, Defendant violated Ark. Code Ann. § 11-4-405 and is liable to Plaintiff and the members of the class "double the wages due."

153. As a result of Defendant's unlawful acts, Plaintiff and the members of the class have been deprived of compensation in an amount to be determined at trial, and is entitled to costs, liquidated damages, reasonable attorneys' fees, and any other damages and/or penalties as provided to them under Arkansas law.

## <u>COUNT IX</u>
### Unjust Enrichment Under Arkansas Common Law

154. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

155. Under Arkansas law, to recover on a claim of unjust enrichment, a party must show: (1) the plaintiff suffered a detriment; (2) the defendant received money from the plaintiff to which it was not entitled and which should be restored to the plaintiff; (3) there was some operative act, intent, or situation that made the alleged enrichment of the defendant unjust and inequitable; and 4) the amount by which the defendant was unjustly enriched.

156. Defendant has received and benefited from the uncompensated labor of Plaintiff and the members of the class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

157.     At all relevant times herein, Defendant devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff and the members of the class without paying them the minimum wage for all hours worked and overtime pay for all hours worked over 40 hours per workweek.

158.     Additionally, Plaintiff and the members of the class has advanced certain payment for obligations which were owed by Defendant for significant costs and expenses which were necessary for the operation of Defendant's business, including, but not limited to, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellular telephone charges, and other equipment necessary and expenses to complete their job duties.

159.     At the same time, Defendant retained benefits resulting from its refusal to pay its legal obligations and business expenses as an employer, including, but not limited to, workman's compensation contributions, workman's compensation benefits, unemployment insurance payments, unemployment insurance, and wages.

160.     Contrary to all good faith and fair dealing, Defendant encouraged Plaintiff and the members of the class to perform work during the day while failing to pay minimum wage for all hours they worked and overtime wages for all hour worked over 40 hours per workweek.

161.     By reason of having secured the work and efforts of Plaintiff and the members of the class without paying minimum wage for all hours worked and overtime wages for all hour worked over 40 hours per workweek, Defendant enjoyed reduced overhead with respect to its labor costs, and therefore realized additional earnings and profits to its own benefit, and to the detriment of Plaintiff and the members of the class.

162.     Defendant retained and continue to retain such benefits contrary to fundamental principles of justice, equity, and good conscience.

163.     As a result, Plaintiff and the members of the class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

1. Certification of the proposed FLSA Collective and Rule 23 classes;

2. Appointment of Plaintiff as representative of the FLSA Collective and Rule 23 classes, and Plaintiff's counsel as counsel of the proposed FLSA Collective and Rule 23 classes;

3. Compensatory and/or punitive damages in favor of Plaintiff, the FLSA Collective, and the classes, including actual damages, arising from Defendant's wrongful and illegal conduct;

4. An accounting by Defendant to Plaintiff, the FLSA Collective and the classes the amount of damages incurred by them;

5. Injunctive and declaratory relief;

6. Pre-judgment and post-judgment interest as may be allowed by law;

7. Statutory and/or liquidated damages;

8. An award of reasonable attorneys' fees as provided by applicable law;

9. All costs of suit; and

10. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 11, 2021

EDGAR LAW FIRM LLC

*/s/ John F. Edgar*

John F. Edgar      MO #47128
Ryan J. Loehr      MO #66563
2600 Grand Blvd., Suite 440
Kansas City, MO 64108
Telephone: 816-531-0033
Facsimile: 816-531-3322
Email: jfe@edgarlawfirm.com
      rjl@edgarlawfirm.com

24

James E. Miller (*Pro Hac Vice* to be submitted)
Laurie Rubinow (*Pro Hac Vice* to be submitted)
SHEPHERD FINKELMAN MILLER
 & SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (866) 300-7367
Email: jmiller@sfmslaw.com
         lrubinow@sfmslaw.com

Chiharu G. Sekino (*Pro Hac Vice* to be submitted)
SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (866) 300-7367
Email: csekino@sfmslaw.com

Monique Olivier (*Pro Hac Vice* to be submitted)
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Email: monique@osclegal.com